## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **EDDIE MILLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-CV-01393-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Commissioner of*** | : | |
| ***Social Security,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Eddie Miller ("Plaintiff") brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.[2]  For the reasons below, the undersigned **REVERSES**

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  [*See* Dkt. Entries dated 10/6/2014 and 10/7/2014].  Therefore, this Order constitutes a final Order of the Court.

[2]     Title II of the Social Security Act provides for federal Disability Insurance Benefits.  42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits ("SSI") for the disabled.  Title XVI claims are not tied to the attainment of a particular period

the final decision of the Commissioner **AND REMANDS** the case to the Commissioner for further proceedings consistent with this Opinion.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 16, 2012, alleging disability commencing on January 1, 2012.  [Record (hereinafter "R") 71, 72].  Plaintiff's application was denied initially and on reconsideration.  [R71, 72-87].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on January 9, 2014.  [R32-56].  The ALJ issued a decision on February 4, 2014, finding that Plaintiff was not disabled.  [R12-20].  Plaintiff sought review by the Appeals Council, which denied Plaintiff's request for review on March 12, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

---

of insurance disability. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

2

Plaintiff then sought review of the Commissioner's decision by filing an action in this Court on May 8, 2014. [*See* Docs. 1, 2]. The answer and transcript were filed on September 3, 2014. [Docs. 6-7]. On October 6, 2014, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 10], and on November 5, 2014, the Commissioner filed a response in support of the decision, [Doc. 11]. Plaintiff filed a reply brief on November 17, 2014. [Doc. 12]. The parties waived oral argument before the undersigned. [*See* Dkt. Entry dated 6/4/2015]. The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to § 405(g).

## II.   STATEMENT OF FACTS

### A.   Background

Plaintiff was 41 years old on the alleged onset date of disability, [R57], and has a high school education, [R69]. He has past relevant work as a maintenance mechanic. [R47].

3

**B.      Medical Records[3]**

In December 2011, Plaintiff had a CT scan of the head due to complaints of vertigo and headache.  [R253].  There were no abnormal findings.  [*Id*.].

In January 2012, Plaintiff presented to the emergency room with complaints of dizziness and anxiety.  [R267].  He was prescribed medication and given an impression of dizziness and hypertension.  [R268].  Plaintiff then was treated by his primary care physician, Freddy Gaton, M.D., several times in January for dizziness.  [R285-95, 303-05].  Plaintiff also had an MRI of the brain in January 2012, the findings of which were unremarkable, but mild bifrontal microvascular ischemic changes were suspected. [R315, 387].

In February 2012, Dr. Gaton referred Plaintiff to Dr. Branam for evaluation of Plaintiff's panic attacks and agoraphobia as Dr. Gaton believed that Plaintiff's dizziness was psychiatric in nature.  [R313].  In March 2012, Dr. Gaton noted that Plaintiff was unable to leave the house on some days and that his panic attacks are less frequent when he is at home.  [R324].  Dr. Gaton assessed Plaintiff with panic disorder and prescribed medication.  [R328].

---

[3]      As Plaintiff did not challenge the ALJ's findings pertaining to his physical impairments, recitation of the facts is limited to Plaintiff's mental impairments.

In April 2012, Dr. Gaton reported to Plaintiff's employer that Plaintiff was unable to work due to a primary diagnosis of dizziness and a secondary diagnosis of panic disorder. [R363]. Dr. Gaton stated that Plaintiff's symptoms began in May 2011, and that his treatment plan was by medication and neurological and psychiatric evaluation. [*Id.*].

On the referral from Dr. Gaton, Plaintiff received treatment with James W. Branam, M.D., a psychiatrist at the Center for Psychiatric Care, from April 2012 through December 2013. [R409-12, 435-37, 461-75, 477-81]. Dr. Branam diagnosed Plaintiff with panic disorder with agoraphobia. [R412].

In August 2012, Plaintiff had a consultative examination by Diane Cerjan, Psy. D., pertaining to Plaintiff's mental impairments. [R423-28]. Plaintiff reported that his mental health problems started in May 2011 and his anxiety started gradually after he stopped smoking. [R424]. Plaintiff reported that he only wanted to stay at home in his "safety zone," but that he occasionally had panic attacks at home. [*Id.*]. Plaintiff further reported that he was not able to go to Wal-Mart and is only able to go to other stores for an hour at a time. [R425]. Plaintiff also reported that he enjoys camping, but Dr. Cerjan noted that the last time he went was in Spring 2011. [*Id.*]. Dr. Cerjan opined that, based on her behavioral observations and results of the tests she

AO 72A
(Rev.8/8
2)

conducted, Plaintiff's psychiatric symptoms did not appear to be exaggerated. [R427].

Dr. Cerjan diagnosed Plaintiff with panic disorder with agoraphobia. [*Id*.]. She further

opined that

> He seems capable of understanding and carrying out simple and complex instructions given his IQ score and past work history. No problems with concentration or pace were observed. Mr. Miller appears capable of basic social skills as he is able to get along well with family members. Overall, he appears capable of adapting to work related stress, although he will benefit from consistent mental health treatment. He may perform best in work environments requiring limited contact with others. If given funds he is capable to handle his funds in his own best interest since there was no significant impairment noted in judgment.

[R428].

In November 2012, Dr. Branam completed a Mental Impairment Questionnaire. [R432-34]. Dr. Branam noted that Plaintiff's most recent mental status examination was in October 2012, during which Plaintiff's appearance and general behavior were abnormal as Plaintiff had psychomotor agitation with restlessness and overt anxiety; Plaintiff's affect and mood were markedly abnormal as Plaintiff had intense anxiety with dysfunction; Plaintiff had abnormal thought process and flow of mental activity due to anxiety; and his recent and remote memory were abnormal due to affective dysphoria and anxiety. [R432-33]. Dr. Branam noted that Plaintiff was cooperative and compliant with treatment. [R433]. He opined that Plaintiff's ability to understand,

6

remember, and carry out simple instructions was abnormal; Plaintiff's ability to deal with changes in the work setting was markedly abnormal; and Plaintiff's ability to make simple work-related decisions was abnormal. [R433-34]. Dr. Branam further opined that it was highly likely that Plaintiff would decompensate or become unable to function under stress. [R434].

In January 2013, Dr. Branam completed a Supplemental Questionnaire to determine Plaintiff's Residual Functional Capacity ("RFC"). [R441-42]. In it, he opined that Plaintiff would have marked to severe limitations in his ability to function in the workplace. [*Id*.]. Dr. Branam noted that Plaintiff has been cooperative and compliant with treatment, however "the quality of his psychiatric medical condition continues to preclude his ability to pursue or maintain gainful employment." [R442].

In December 2013, Dr. Branam wrote a letter explaining that Plaintiff has been diagnosed with panic disorder with agoraphobia and generalized anxiety disorder. [R481]. Dr. Branam again noted that Plaintiff has been cooperative and compliant with his treatment. [*Id*.]. Dr. Branam wrote that

> Mr. Miller has continued to struggle with profound anxiety with frequent daily episodes of panic with autonomic overactivity. He remains agoraphobic and is frequently unable to leave his grandmother's house; noting that he is fortunate to have his grandmother; otherwise he would

AO 72A
(Rev.8/8
2)

be homeless due to his inability to pursue or maintain gainful employment due to his psychiatric medical conditions.

[*Id*.].

## C.    Evidentiary Hearing Testimony

Plaintiff testified that he lives in a van across the street from his grandmother's house.  [R36].  He testified that he has a driver's license and is able to drive short distances.  [*Id*.].  He received unemployment benefits.  [R38].  The ALJ asked Plaintiff if he checked the box on the unemployment forms saying that he was ready, willing and able to work, to which Plaintiff replied that he did check the box because "it was either that or live on the streets."  [R39].

Plaintiff testified that he passes out due to his anxiety.  [*Id*.].  He reported seeing Dr. Branam for his condition, initially once a month but at the time of the hearing, once every three months.  [*Id*.].  Plaintiff testified that it is hard for him to get down to Dr. Branam's office, so he calls Plaintiff to check on him.  [*Id*.].  The ALJ asked Plaintiff if Dr. Branam recommended counseling, to which Plaintiff responded that he only sees Dr. Branam as he is not good with crowds.  [*Id*.].

The ALJ stated that he was concerned that there was no attempt by Dr. Branam to teach Plaintiff coping mechanisms since becoming symptomatic with anxiety.

AO 72A
(Rev.8/8
2)

[R40, 41].  Plaintiff responded that Dr. Branam only instructed Plaintiff to take medicine and stay in his safe zone.  [R40].  He testified that as long as he is taking his medication, he is okay in his safe zone.  [*Id.*].  Plaintiff described his safe zone as someplace he can be by himself.  [R45].  The ALJ then questioned Dr. Branam's treatment procedures, suggesting that it was defeatist for Plaintiff to take medication and stay in his safe zone which seemed to be accepting the status quo without making an attempt to get better.  [*Id.*].  Plaintiff responded that he tried to go out and do things, such as traveling to Walmart, but when he walks in the door, his chest gets tight and he starts to breathe heavy and hyperventilate.  [R40-41].

The ALJ asked Plaintiff "[w]hen you see Dr. [Branam], is that for a medication check? Does he ask you how your medications are working?"  [R41].  Plaintiff responded yes.  [*Id.*].

On examination by Plaintiff's attorney, Plaintiff testified that he calls Dr. Branam's office about once a month and he would call him back.  [R42].  Plaintiff testified that during the phone conversations, they would talk about why he has feelings of anxiety and Dr. Branam would tell him that he has agoraphobia, he needs to stay in his safe zone and that it is hereditary.  [R42].

9

AO 72A
(Rev.8/8
2)

Plaintiff also testified that a typical day for him is sitting in his van, watch squirrels and listen to the radio, but that it was hard for him to concentrate when listening to the radio. [R43-44].  He does not cook, clean or perform outdoor chores. [R44].  In the past two years, he had been to the gas station and the Dollar Store but his symptoms start as soon as he leaves.  [*Id*.].  He did not go to the grocery store.  [R45].

On reexamination by the ALJ, the ALJ noted that Plaintiff had an emergency room visit in which Plaintiff had a rapid heartbeat, high blood pressure and high alcohol level.  [R45].  Plaintiff testified that on that day, his grandmother did not have money to get the medication and his doctor told him that the medication has the same effect as alcohol, so he tried that and once it wore off, he became anxious.  [R46].  Plaintiff testified that that was the only instance that he ran out of medication.  [*Id*.].  He stated that he got the alcohol himself from the store, he "ran in and got it and come back." [*Id*.].  He further testified that he could afford the alcohol, which was about $5.00 whereas his medication was about $85.00.  [*Id*.].

A vocational expert ("VE") described Plaintiff's work as a maintenance mechanic as medium and skilled.  [R47-48].  The VE testified that a hypothetical person with Plaintiff's education and previous work experience with no exertional limitations and should not perform overhead work, have no exposure to unprotected

10

heights or dangerous machinery, was limited to simple, repetitive tasks, with no direct customer service, occasional contact with co-workers and supervisors, occasional changes in work setting and procedures and no fast-paced production environment, could not perform Plaintiff's past work, but could perform jobs as a warehouse worker, a night cleaner, and hand packager.  [R48-49].

Using the previous hypothetical, the ALJ replaced "occasional contact with co-workers and supervisors" to rare contact with co-workers and supervisors which the ALJ specifically defined as 10 percent of the workday.  [R49]. The VE testified that the hypothetical person could still perform the previously-mentioned jobs, however there would be a 30 to 40% reduction in the number of jobs.  [R49-50].  The VE further testified that if the hypothetical were amended to preclude any contact with others, there would be no jobs that would be available.  [R50].

## III.   ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.    The claimant has not engaged in substantial gainful activity since January 1, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

11

3.      The claimant has the following severe impairments: panic disorder with agoraphobia and right rotator cuff syndrome (20 CFR 404.1520(c)).

. . .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

. . .

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot perform any overhead work and must avoid all exposure to unprotected heights and dangerous machinery.  Additionally he is limited to simple, repetitive tasks with no direct customer service.  He can only have occasional contact with coworkers and supervisors and occasional changes in the work setting/procedures.  Lastly, he cannot work in a fast-paced production environment.

. . .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

7.      The claimant was born on September 7, 1970 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

. . .

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012 through the date of this decision (20 CFR 404.1520(g)).

[R14-20].

In support of the decision, the ALJ evaluated the Plaintiff's physical impairment under Listing 1.02. [R14]. The ALJ recognized that Plaintiff had been assessed with rotator cuff syndrome and an x-ray from February 2011 revealed moderate subacromial spurring and flattening of the greater tuberosity in the right shoulder. [R15]. The ALJ noted that there was no indication of symptoms in the left shoulder and no indication that Plaintiff's right shoulder condition resulted in an inability to perform fine and gross movements. The ALJ further noted that Plaintiff could sweep, vacuum, mop, prepare

13

meals and drive.  Therefore, the ALJ found that Plaintiff's right shoulder condition does not meet or equal Listing 1.02.  [*Id*.].

The ALJ evaluated Plaintiff's mental impairments under Listing 12.06 and analyzed the "paragraph B" criteria.  [*Id*.].  The ALJ found that Plaintiff has mild difficulties in activities of daily living as Plaintiff reported in August 2012 that he watches TV and prays during the day, and is able to complete chores, prepare meals, manage finances and pays bills, make purchases, drive, and can care for his own personal hygiene without any problems.  The ALJ further noted that, at the hearing, Plaintiff testified that he could make short trips to the store.  The ALJ found that Plaintiff has moderate difficulties in social functioning as Plaintiff's August 2012 report indicated that he had a good relationship with his wife.  The ALJ also noted that Plaintiff testified that he has discomfort when outside of his "safe zone" and can make short trips to the store.  The ALJ further found that the record documents subjective complaints of agoraphobia.  With regard to concentration, persistence or pace, the ALJ found that Plaintiff has moderate difficulties, noting that Plaintiff watches TV, can prepare simple meals, manage finances, and pay bills.  The ALJ further noted that at the August 2012 consultative examination, Plaintiff's concentration was adequate and his memory was appropriate.  [*Id*.].

14

AO 72A
(Rev.8/8
2)

In support of the RFC, the ALJ discussed Plaintiff's testimony at the hearing in which Plaintiff testified that he received unemployment benefits and certified that he was ready and able to work.  [R17].  The ALJ noted that Plaintiff testified that he sees a psychiatrist every three months but has never had any counseling.  Plaintiff testified that he needs to stay in his safe zone, but is able to make short trips to the store to buy necessary items for himself or his grandmother.  The ALJ further noted that, regarding an emergency room visit in 2013, Plaintiff testified that he had run out of medication, his doctor told him that his medication worked like alcohol, and he went to the store and bought alcohol instead of medicine.  The ALJ additionally noted that Plaintiff testified that his discomfort arises from being outside his safe zone and is not necessarily related to being around people.  [*Id*.].

The ALJ found that Plaintiff was not entirely credible as Plaintiff certified that he was able to work to receive unemployment benefits, Plaintiff bought alcohol instead of medication, and treatment has been minimal with only medication checks originally occurring monthly and now occurring every three months.  [*Id*.].  The ALJ additionally noted that Plaintiff's statements that his anxiety is a result of being outside of his safe zone are inconsistent with his statements that he enjoys camping.  [*Id*.].

15

AO 72A
(Rev.8/8
2)

In considering the medical evidence, the ALJ noted that Plaintiff had been diagnosed with panic disorder with agoraphobia. [*Id.*]. The ALJ noted that Plaintiff reported associated sporadic dizziness, however objective testing showed no physical cause for his vertigo/dizziness. Thus, Plaintiff sought psychiatric treatment with Dr. Branam. The ALJ observed that although Dr. Branam prescribed Plaintiff medication, Plaintiff did not attend any counseling sessions and there have been no psychiatric hospitalizations other than the April 2013 emergency room visit. Thus, the ALJ found that Plaintiff is capable of performing simple, repetitive tasks with no direct customer service and only occasional contact with coworkers and supervisors, occasional changes in the work setting/procedures and no fast-paced production environments. [*Id.*].

Regarding Plaintiff's right shoulder, the ALJ noted that treatment was very conservative with no significant findings on x-ray, no indication that Plaintiff sought orthopedic treatment since the alleged onset date despite a recommendation to do so, no injection therapy other than the one injection administered in February 2011, and no physical therapy or surgical intervention. [R17-18]. Thus, the ALJ found that Plaintiff is capable of performing work within all exertional capacities with no overhead work and no exposure to unprotected heights or dangerous machinery. [R18].

16

The ALJ recognized that Dr. Branam provided several opinion statements, the most recent being in December 2013.  [*Id*.].  The December 2013 opinion stated that Plaintiff had profound anxiety with frequent daily episodes of panic and agoraphobia and was unable to maintain gainful employment.  The ALJ noted that in August 2013, Dr. Branam assessed Plaintiff with a GAF score of 40.  In January 2013, Dr. Branam opined that Plaintiff had marked and severe mental limitations stemming from his conditions.  In November 2012, Dr. Branam reported that Plaintiff was unable to perform any work activity due to his severe mental conditions.  The ALJ accorded little weight to these opinions.  The ALJ explained that Dr. Branam's treatment notes are minimal and there is no indication that counseling was provided or recommended, and Dr. Branam's sole treatment method was related to prescribing medication.  Moreover, the ALJ noted that Dr. Branam decreased Plaintiff's visits from once per month to once every three months, which is inconsistent with Plaintiff reports of increased complaints and inconsistent with Dr. Branam's conclusions.  The ALJ additionally noted that there have been no psychiatric hospitalizations other than the April 2013 emergency room visit where Plaintiff was intoxicated.   Thus, the ALJ accorded little weight to Dr. Branam's opinion as it is inconsistent with the longitudinal evidence.  [*Id*.].

17

The ALJ accorded significant weight to consultative examiner Dr. Cerjan's August 2012 opinion.  Dr. Cerjan concluded that Plaintiff could understand and carry out simple and complex instructions, had basic social skills, could get along well with family members, and adapt to work related stress.  Dr. Cerjan noted that Plaintiff would perform best in work environments requiring limited contact with others and assigned a GAF score of 65.  The ALJ found that Dr. Cerjan's opinion was consistent with the lack of psychiatric hospitalizations, lack of counseling, and decreasing frequency in psychiatric treatment.  [*Id.*].

Finally, the ALJ gave some weight to the state agency medical consultants who concluded that Plaintiff had no exertional limitations, but could never climb ladders/ropes/scaffolds, occasionally climb ramps/stairs, and frequently crawl; was limited in right overhead reaching; should avoid all exposure to hazards; and have limited interpersonal interaction.  [*Id.*].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

18

12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities.

19

*See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id*.

   If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step

20

five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980) (Murphy, J.). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529

21

(11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

AO 72A
(Rev.8/8
2)

## VI.   CLAIMS OF ERROR

Plaintiff raises three issues in this appeal: (1) the ALJ erred by substituting his own opinion for that of the treating physician Dr. Branam, (2) the ALJ's credibility determination was erroneous, and (3) the ALJ's RFC determination is not supported by substantial evidence as the ALJ failed to impose mental limitations to account for Plaintiff' agoraphobia.  [Doc. 10 at 5].  The Court discusses each argument in turn.

### A.   Dr. Branam

#### 1.   Arguments of the Parties

Plaintiff first argues that, when the ALJ rejected the limitations set forth by Dr. Branam because the ALJ did not believe Dr. Branam prescribed the appropriate treatment, he substituted his own lay opinion for that of a treating specialist. [Doc. 10 at 11].  Plaintiff argues that his reasons for rejecting the limitations assessed by Dr. Branam are unsupported by substantial evidence.  [*Id*.].  Plaintiff contends that Dr. Branam's assessments are supported by his treatment notes, which consistently documented Plaintiff's panic episodes, anxiety and autonomic overactivity.  [*Id*. at 13]. Plaintiff also argues that Dr. Cerjan's opinion supports Dr. Branam's findings. [*Id*. at 15].  Plaintiff claims that Dr. Cerjan noted that Plaintiff only wants to stay in his safety zone, is usually okay at home, but occasionally has panic attacks at home.  [*Id*.].

23

Dr. Cerjan also noted that Plaintiff is only able to go to stores for an hour at a time and found Plaintiff to be sincere in his presentation, consistent in his reporting, and his psychiatric symptoms did not appear to be exaggerated.  [*Id*. at 15-16].  Plaintiff argues that Dr. Cerjan agreed with Dr. Branam about Plaintiff's diagnosis and symptoms, but because she only saw him once and because panic disorder with agoraphobia is variable, she found him less limited than Dr. Branam.  [*Id*. at 16].

Plaintiff argues that the ALJ's reasoning – that Dr. Branam's treatment notes are minimal, there was no indication that counseling was provided or recommended, the sole treatment was to provide medication, and the decrease in treatment is inconsistent with Plaintiff's increasing problems and Dr. Branam's conclusions – is not supported by substantial evidence.  [*Id*.].  Plaintiff argues that there are twenty pages of handwritten mental health treatment notes from Dr. Branam which detail Plaintiff's symptoms, diagnoses, and treatment and cover in-office visits as well as numerous telephone calls between Dr. Branam to Plaintiff.  [*Id*.].  Thus, Plaintiff argues that the ALJ's assertion that Dr. Branam's treatment notes are minimal is unsubstantiated.  [*Id*.].  Plaintiff also argues that, although Dr. Branam decreased the frequency of the office visits, the treatment notes documented Plaintiff's continuing severe symptoms and that by August 2013, Plaintiff's agoraphobia had gotten worse and Dr. Branam assessed a

24

GAF score of 40.  [*Id*. at 17-18].  Thus, Plaintiff argues the ALJ's conclusion on this point is refuted by the treatment notes that substantiated Plaintiff's decline.  [*Id*. at 18]. Plaintiff also submits that the ALJ overlooked the explanation for the decline in office visits: that Plaintiff could not afford gas money to go 64 miles from his home in Lovejoy, Georgia, to Macon, Georgia, where Dr. Branam's office is located.  [*Id*. at 18-19].  Plaintiff further argues that the ALJ inserted his own medical opinion by stating that Dr. Branam should have prescribed counseling and hospitalization if Plaintiff was as limited at Dr. Branam opined.  [*Id*. at 19].  However, Plaintiff argues, Dr. Branam is a treating specialist and is qualified to determine the best treatment for his patient. [*Id*.].  Plaintiff argues that, just as in *Hillsman*, the ALJ impermissibly substituted his own judgment for that of a medical expert.  [*Id*. (citing *Hillsman*, 804 F.2d at 1182)].

In response, the Commissioner argues that the ALJ appropriately noted that Dr. Branam's treatment notes were minimal as they did not contain mental status findings or other objective indicia of functioning, but primarily recorded Plaintiff's subjective history of complaints and nothing more.  [Doc. 11 at 8 (citing [R412])]. Defendant further argues that many of the records are brief, handwritten, and were apparently conducted by phone.  [*Id*. at 9].  However, Defendant argues that, "[d]espite the allegedly severe and debilitating nature of Plaintiff's impairment, Dr. Branam

simply prescribed medications for Plaintiff's impairment." [*Id.*].  Defendant further notes that the ALJ observed that there was no evidence of counseling or referral for additional treatments, and no hospitalizations. [*Id.*].  Moreover, Defendant argues that the decrease in scheduled visits tend to indicate improvement in Plaintiff's condition. [*Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003))].

Defendant further argues that Dr. Branam's opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and were not consistent with the other substantial evidence in the case record, thus the ALJ appropriately declined to afford them controlling weight.  [*Id.* at 10, 12 (citing 20 C.F.R. § 404.1527(c)(3); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004))]. Moreover, Defendant argues that Dr. Branam's conservative and routine treatment of Plaintiff, as noted by the ALJ, also undermines his opinion.  [*Id.* at 12 (citing 20 C.F.R. § 404.1527(c)(2)(ii); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41; *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996))].  Defendant submits that the ALJ rightfully gave greater weight to the opinion of Dr. Cerjan because she documented objective findings that supported her opinion and her opinion was consistent with the conservative treatment of record.  [*Id.* at 13-14].

26

In reply to Defendant's argument that Dr. Branam's treatment records did not include mental status findings or other indicia of functioning, Plaintiff argues that Dr. Branam's notes show that he conducted a mental status examination during the in-office visits. [Doc. 12 at 1 (citing [R411, 412, 471-75])]. Plaintiff argues that treatment notes in January through August 2013 specifically include a section entitled "mental status examination" and Dr. Branam made findings accordingly. [*Id*. at 2-3]. Thus, Plaintiff argues, Defendant's argument that Dr. Branam did not conduct mental status examinations, did not document psychiatric signs, and only reported subjective complaints is false. [*Id*. at 3]. Plaintiff further argues that Defendant's suggestion that Dr. Branam's opinions were conclusory is also incorrect as the treatment notes clearly documented Plaintiff's worsening mental health condition, including GAF scores of 40 in 2013. [*Id*. at 3-4]. Plaintiff also reiterated his arguments that Dr. Branam's treatment notes were not minimal and that the ALJ substituted his own medical opinion for that of the treating physician. [*Id*. at 4-5]. Plaintiff argues that the cases cited by Defendant are distinguishable because both *Crawford* and *Phillips* involved plaintiffs with physical impairments and the treating physicians opinions were inconsistent with their own treatment notes. [*Id*. at 5-6 (citing *Crawford*, 363 F.3d at 1159; *Phillips*, 357 F.3d at 1240)]. Plaintiff argues that here, Dr. Branam's treatment notes support the

27

limitations assessed and there is nothing in the notes that contradicts the limitations found. [*Id*. at 6]. Plaintiff additionally argues that relying on the report of Dr. Cerjan, a one-time examiner, does not constitute substantial evidence, especially when contradicted by the evaluation of the treating physician. [*Id*. at 7]. Plaintiff argues that Defendant's argument that deference to Dr. Cerjan's opinion was warranted because she documented objective findings ignores that Dr. Branam also documented objective findings. [*Id*. at 7-8].

### 2.    Discussion

While the Court finds that the ALJ provided reasons for rejecting Dr. Branam's medical source statements, the Court finds that these reasons are not supported by substantial evidence. The ALJ provided five reasons for assigning little weight to Dr. Branam's opinions: 1) Dr. Branam's treatment notes are minimal with only medication checks; 2) Dr. Branam's sole treatment method was prescribing medication and there is no indication that counseling was provided or recommended; 3) the decrease in treatment from once a month to once every three months is inconsistent with Plaintiff's reports of increasing complaints and inconsistent with the conclusions provided by Dr. Branam; 4) there have been no psychiatric hospitalizations other than the April 2013 emergency room visit in which Plaintiff was intoxicated; and 5) the

28

opinions are inconsistent with the longitudinal evidence of record.  [R17, 18].

First, as noted by Plaintiff, the treatment notes are not minimal as there are over 20 pages of handwritten notes written personally by Dr. Branam spanning April 2012 to August 2013.[4]  [*See* R409-17, 432-44, 460-480].  The record reflects very detailed notes provided in 2012 on the dates of April 19, May 8, May 24, June 28, July 16, and August 15; and in 2013 on the dates of January 14, May 7, and August 6.  [R410-12, 436-37, 461-64, 471-75, 477-78].  As noted by the ALJ, Dr. Branam saw Plaintiff once a month until January 2013 when Dr. Branam decreased the frequency of the visits to once every three months.  [R18, 464].  However, the record reflects that Dr. Branam personally spoke with Plaintiff over the phone concerning his issues in between appointments.  [R468-70].  More important, the ALJ failed to discuss one of the asserted reasons for the decrease of in-office appointments.  Plaintiff testified that it was difficult for him to get to Dr. Branam's office more than 60 miles from his home, necessitating phone calls instead.  [R39].  The record further shows that Plaintiff had financial difficulties with traveling to Dr. Branam's office due to not affording gas and his van was repossessed, leaving him without transportation.  [R468, 471, 472].  The

---

[4]      While most of Dr. Branam's handwritten notes are illegible, the ALJ did not cite this as a basis to discredit Dr. Branam's opinions.

29

ALJ failed to discuss these articulated reasons for the decrease in visits, and instead concluded that the decrease in visits meant that Plaintiff is not as limited as stated by Dr. Branam.  This was error.

This is not the only instance in which the ALJ determined that Dr. Branam's course of treatment was inconsistent with his opinions.  The ALJ further found that Dr. Branam's sole treatment method was prescribing medication and Dr. Branam did not recommend that Plaintiff attend counseling.  [R18].  The Court agrees with Plaintiff that the ALJ improperly substituted his own lay person opinion.  It is improper for an ALJ to substitute his own judgment for that of a medical expert.  *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986); *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *Marbury v. Sullivan*, 957 F.2d 837, 840-841 (11th Cir. 1992) (Johnson, J., concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians."); *see also Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (holding that the ALJ impermissibly "played doctor" when he reached his own independent medical conclusion in finding that Plaintiff was not disabled because no doctor prescribed insulin); *Meece v. Barnhart*, 492 Fed. Appx. 456, 465 (6th Cir. Aug. 8, 2006) ("[An] ALJ may not substitute his own medical judgment for that of the

AO 72A
(Rev.8/8
2)

treating physician where the opinion of the treating physician is supported by the medical evidence."); *Hobbs v. Astrue*, 627 F. Supp. 2d 719, 729 (W.D. La. 2009) ("An ALJ does not have the medical expertise to substitute his opinion as to the nature of a claimant's medical complaints for the supported and unrefuted diagnosis of the treating physician, particularly one who is a specialist.") (citing *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003)).

Here, the ALJ does not cite to any evidence providing that counseling is the mandated or even the preferred treatment method for a severe impairment of panic disorder with agoraphobia.  Nor does the ALJ cite to any other medical opinion in the record recommending that Plaintiff would benefit from counseling or prescribing a treatment method different than Dr. Branam's.  This is all the more critical because Dr. Branam is not only Plaintiff's treating physician, but is a specialist in psychiatry who was specifically referred by Plaintiff's primary care doctor.  [R313].  Here, the ALJ merely disagrees with the treatment method of a specialist and interject what he believes to be the proper treatment method.  *See Myles*, 582 F.3d at 677-78 (holding that the ALJ impermissibly "played doctor" when he reached his own independent medical conclusion in finding that Plaintiff was not disabled because no doctor prescribed insulin);  *Meece*, 192 Fed. Appx. at 465 ("While the ALJ may have

AO 72A
(Rev.8/8
2)

prescribed different pain medication than that prescribed by Plaintiff's doctors, this decision is beyond the expertise of the ALJ and is not a legitimate basis for an adverse credibility determination."); *Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. Dec. 18, 2009) ("[I]t is not apparent that the treatment the ALJ expected Halsell to pursue would have resolved her problems and failure to pursue ineffective treatment cannot be a sound basis for the ALJ's adverse credibility finding.") (internal quotations, citations, and punctuation omitted); *Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 545 (7th Cir. May 12, 2004) ("[T]he ALJ improperly played doctor when he listed a host of possible treatments, including use of a TENS unit, biofeedback, additional surgery, a visit to a pain clinic, and continued physical therapy among others, that he believed Buchholtz would have pursued if his pain was disabling."); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1251 (N.D. Ala. 2003) (finding that the ALJ played doctor in finding that the plaintiff could not be suffering from disabling pain in part because there was no recommendation for surgery in the record).[5]

Similarly, the ALJ's rejection of Dr. Branam's opinions on the basis that there

_____

[5]     The Court also notes that if the ALJ had doubts regarding Dr. Branam's treatment methods, rather than coming up with his own medical conclusions, the regulations allow for the ALJ to recontact Dr. Branam for clarification. *See* 20 C.F.R. § 404.1520b.  This suggestion was even made by Plaintiff at the hearing, to which the ALJ erroneously replied, "Sorry, that's way out of my office."  [R55-56].

32

is a lack of psychiatric hospitalizations is also not a valid reason to reject the opinions. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (finding that the ALJ improperly relied on the lack of emergency room visits as a basis that the claimant's seizures were not frequent enough to be equal in severity to a listed impairment); *Bennett*, 288 F. Supp. 2d at 1251 ("To suggest that only one emergency room visit due to pain means the plaintiff's complaints of pain should not be credited shows the ALJ's utter lack of fairness").

The ALJ further reasoned that Dr. Branam's opinions were not consistent with the longitudinal evidence of record.  [R18].  To the extent that the ALJ found that Dr. Branam's opinions are inconsistent with his own treatment notes, the ALJ did not discuss any treatment notes, other than to the extent referenced above, and thus did not point out how those notes were inconsistent with his opinions.  Defendant argues that Dr. Branam did not rely on objective findings, such as mental status examinations, unlike Dr. Cerjan. [Doc. 11 at 8, 12-13].  However, Dr. Branam's treatment notes dated January 14, 2013, May 7, 2013, and August 6, 2013 specifically note findings upon mental status examination.  [R461-64].  Moreover, the ALJ noted that Dr. Branam assessed Plaintiff with a GAF score of 40, thus demonstrating an objective finding. [R18].  As a result, the ALJ's assertion that Dr. Branam only conducted  medication

AO 72A
(Rev.8/8
2)

checks is erroneous.

To the extent that the ALJ found that Dr. Branam's opinion was inconsistent with other medical evidence in the record, the Court observes that the only other medical evidence relating to Plaintiff's mental impairment is the August 2012 consultative examination of Dr. Cerjan.  [R423-29].  As noted by Dr. Cerjan, her examination was a one-time assessment lasting about two hours and included the records from Dr. Branam from April 2012 to July 2012.  [R423].  Dr. Cerjan indicated that Dr. Branam's notes were difficult to read, but that she could make out that Plaintiff was diagnosed with panic disorder with agoraphobia.  [*Id*.].  Dr. Cerjan opined that, based on her behavioral observations and results of the tests she conducted, Plaintiff's psychiatric symptoms did not appear to be exaggerated and diagnosed Plaintiff with panic disorder with agoraphobia.  [R427].  Dr. Cerjan further opined that Plaintiff appeared capable of understanding and carrying out simple and complex instructions with no problems in concentration or pace.  [R428].  Dr. Cerjan also opined that Plaintiff appeared capable of basic social skills as he got along well with his family members, but would perform best in a work environment that required limited contact with others, and that he appeared capable of adapting to work related stress, although he would benefit from consistent mental health treatment.  [*Id*.].

AO 72A
(Rev.8/8
2)

The regulations provide that more weight is to be given to a treating physician than a non-treating physician.  20 C.F.R. § 40.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). With the exception of the final opinion on Plaintiff's limitations, Dr. Cerjan's findings are consistent with the findings of Dr. Branam.  The Court further notes that Dr. Cerjan did not have the benefit of Dr. Branam's later treatment notes and opinions as Dr. Cerjan's examination was conducted in August 2012, before Dr. Branam's initial November 2012 opinion.

As a result, the ALJ's assigning little weight to Dr. Branam's opinion is not supported by substantial evidence.

## B.      Credibility

### 1.      Arguments of the Parties

Plaintiff argues that the ALJ's reasons for finding that Plaintiff is not credible – that Plaintiff certified that he was able to work to obtain unemployment benefits, his

AO 72A
(Rev.8/8
2)

treatment was minimal and lacked counseling, his scheduled visits with Dr. Branam were reduced from once a month to once every three months, and the fact that Plaintiff enjoyed camping was inconsistent with needing to stay in his safety zone – are not supported by substantial evidence. [Doc. 10 at 23]. Plaintiff argues that when the ALJ asked him at the hearing about checking the box on the unemployment forms stating that he was ready, willing, and able to work, Plaintiff testified that it was either that or live on the streets. [*Id*.]. Plaintiff argues that receipt of unemployment benefits does not mean that a claimant is able to work. [*Id*. (citing *Roberts v. Callahan*, 971 F. Supp. 498, 501-02 (D.N.M. 1997); *Riley v. Heckler*, 585 F. Supp. 278, 285 (S.D. Ohio 1984))]. Regarding the ALJ's reason that Plaintiff did not receive counseling, Plaintiff reiterated his arguments that the ALJ inserted his own medical judgment here in place of that of the treating physician. [*Id*. at 24]. Moreover, Dr. Branam repeatedly indicated that Plaintiff was cooperative and compliant with his treatment. [*Id*.]. Plaintiff argues that there is no evidence that talk therapy would have alleviated Plaintiff's panic disorder with agoraphobia and that "[t]he 'mere possibility of treatment that would improve the plaintiff's condition is not sufficient to support a denial of benefits.' " [*Id*. (quoting *Haag v. Barnhart*, 333 F. Supp. 2d 1210 (N.D. Ala. 2004))]. To the ALJ's reason that Plaintiff bought alcohol instead of buying

36

medication, Plaintiff argues that the ALJ did not mention that when asked why he didn't buy the medication, Plaintiff told the ALJ that the medication cost $85 and that neither he nor his grandmother had the money.  [*Id*. at 25 (citing [R17])].  Plaintiff argues that because his doctor told him that alcohol has the same effect as his medication, he bought alcohol because he had only enough money to buy that and that was the only time he ran out of medication.  [*Id*.].  Further, Plaintiff argues that there was no reason to discredit Plaintiff's limitations because he enjoys camping as Plaintiff reported that the last time he went camping was Spring 2011, before Plaintiff's alleged onset date.  [*Id*. (citing [R425])].

In response, Defendant argues that "[t]he receipt of unemployment benefits is a factor that weighs against the credibility of a claimant."  [Doc. 11 at 15-16 (citing *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801-802 (6th Cir. July 29, 2004); *Estelle v. Astrue*, No. 2:11-CV-337-FtM-99SPC, 2012 WL 4369296, *20 (M.D. Fla. July 31, 2012))].

In reply, Plaintiff argues that the ALJ failed to consider Plaintiff's reasons for accepting unemployment benefits which is that he would be homeless without it. [Doc. 12 at 9-10].  Plaintiff further reiterated his arguments that the ALJ's implication that Plaintiff is not credible because he did not receive counseling is not a reasonable

37

conclusion and there is no evidence that Plaintiff went camping after his alleged onset date.  [*Id*. at 10].  Thus, Plaintiff argues that the ALJ failed to provide sufficient reasons for not finding Plaintiff to be credible.  [*Id*.].

### 2.    Discussion

The ALJ provided four reasons for finding Plaintiff not to be entirely credible: 1) Plaintiff reported that he is ready and able to work to obtain unemployment benefits; 2) Plaintiff bought alcohol instead of medication when his medication ran out; 3) Plaintiff's report that he enjoys camping is inconsistent with his statements that he has anxiety being outside of his safe zone; and 4) treatment in this case has been minimal with only medication checks which originally occurred monthly, but now occur every three months.  [R17].

As discussed above, the Court finds that the ALJ's reasons regarding Dr. Branam's treatment methods are not supported by substantial evidence.  Thus, on remand, the ALJ should reconsider the medical evidence before assigning weight to Plaintiff's credibility.

The Court also concludes that Plaintiff's report that he enjoys camping is not inconsistent with his testimony that he can only stay in his safe zone, because the record shows that Plaintiff had not been camping since Spring 2011, before the alleged onset

38

date.  [R425].

Further, the ALJ found that Plaintiff bought alcohol instead of medication, but failed to discuss the reasons behind it.  [R17].  The ALJ noted that Plaintiff testified that Plaintiff ran out of medication and Dr. Branam told him that his medication works like alcohol.  [*Id*.].  While the ALJ concluded that Plaintiff simply bought alcohol instead of his medication, the ALJ failed to discuss that Plaintiff testified that neither he nor his grandmother had the money to buy the medication which cost $85, but Plaintiff did have the funds to buy the alcohol to temporarily alleviate his symptoms.  [R46]. Plaintiff further testified that that was the only time he ran out of medication.  [*Id*.].

Further, even assuming that receipt of unemployment benefits (for which ability to work is a precondition) is a factor that weighs against credibility, the Court nonetheless finds that substantial evidence does not support the ALJ's overall credibility determination.  *See Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 767 (11th Cir. Sept. 26, 2014) (finding that the ALJ erred in making the credibility determination that plaintiff was not credible including the ALJ's proffered reason that he received unemployment benefits, thus representing that he was able to work).

Finally, on remand, the ALJ should consider evidence that is both supportive and not supportive of a finding of disability.  In doing so, the ALJ must not cherry-pick

AO 72A
(Rev.8/8
2)

evidence, but also discuss Plaintiff's reasonable explanations.  For example, while the ALJ relied upon Dr. Cerjan's report in August 2012 that Plaintiff had only moderate difficulties in social functioning in part because Plaintiff reported having a good relationship with his wife, [R15], the ALJ failed to acknowledge that Plaintiff testified that his wife left him.  [R43].  Thus, upon remand, a new credibility determination must be made.

### C.   RFC

#### 1.   Arguments of the Parties

Plaintiff argues that the ALJ's RFC determination failed to include any limitations related to Plaintiff's panic attacks or inability to leave his safe zone for longer than an hour.  [Doc. 10 at 20, 21].  Plaintiff argues that because the ALJ found that Plaintiff had a severe impairment of panic disorder with agoraphobia, the RFC should have included limitations accordingly.  [*Id*. at 21].  Plaintiff contends that the ALJ did not account for how frequently the panic attacks occur, how long they last, or whether there are residuals after Plaintiff's panic attacks.  [*Id*. at 21-22].

Defendant argues in response that the ALJ's RFC determination accurately accounts for his limitations and is supported by Dr. Cerjan's opinion and other evidence in the record.  [Doc. 11 at 14].  Defendant notes that the ALJ found that Plaintiff had

AO 72A
(Rev.8/8
2)

minimal treatment, there was only one emergency room visit in which Plaintiff was intoxicated, and Dr. Cerjan noted that he had a good relationship with his wife and he maintained adequate eye contact with no unusual behaviors.  [*Id*. at 14-15].  Thus, Defendant argues, the ALJ reasonably accommodated Plaintiff's disorder in the RFC. [*Id*. at 15].

In reply, Plaintiff argues that Defendant ignored Plaintiff's argument that the ALJ did not account for the impact of Plaintiff's panic attacks on his ability to perform or maintain work activity.  [Doc. 12 at 9].  Plaintiff claims that basing the RFC upon Dr. Cerjan's opinion was error because that opinion fails to address the issues of frequency, length, or residuals of the panic attacks upon Plaintiff's ability to perform work activity.  [*Id*.].

### 2.    Discussion

Because substantial evidence does not support the ALJ's credibility determination or the weight given to Dr. Branam's opinion, the Court concludes that, upon remand, a new RFC should be formulated after reweighing the opinion of Dr. Branam and making a new credibility determination.

## VII.  CONCLUSION

For all of the reasons above, the Court **REVERSES** the final decision of the

41

Commissioner and **REMANDS** the case for further proceedings consistent with this Order and Opinion.

The Clerk is **DIRECTED** to enter final judgment in Plaintiff's favor.

**IT IS SO ORDERED and DIRECTED**, this the 22nd day of September, 2015.

_____

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

42